IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

AUBERY LUNSFORD,                    *

    Plaintiff,                      *

vs.                                 *

                            CASE NO. 3:25-CV-21 (CDL)

CITY OF BOWMAN, *et al.*,            *

    Defendants.                     *

_____

O R D E R

    This case arises from a local political dispute involving a proposal to build twelve commercial poultry houses within the city limits of Bowman, Georgia.  The City Council approved the poultry house rezoning request by one vote.  Disgruntled neighbors filed an appeal in the Superior Court of Elbert County under Georgia law.  The applicant for the rezoning failed to answer the zoning appeal petition, thus leaving the opponents of the rezoning and the City as the only non-defaulting parties in the case.  While the petition was pending, one of the disgruntled poultry house opponents ran for mayor and was elected.  This changed the City Council's balance of support for the rezoning.  With the new mayor and council, the City reconsidered the previous rezoning decision and agreed to a consent judgment with the rezoning opponents, which resulted in the vacating of that prior decision.

    Plaintiff Aubery Lunsford, who was the applicant for the rezoning, tried to have the consent judgment set aside, but the

Superior Court denied his motion. He then brought this action under 42 U.S.C. § 1983, arguing that the City's decision to enter the consent judgment violated his constitutional rights. Defendants argue that Lunsford's present § 1983 claims arising from the entry of the state court consent judgment should be dismissed as barred by the *Rooker-Feldman* doctrine because this Court lacks subject matter jurisdiction over those claims.

This action presents straightforward legal issues: is the state court consent judgment a final judgment under Georgia law, and if it is, does it bar the federal claim in this action that the City's denial of the rezoning application violates Plaintiff's federal constitutional rights? For the reasons set forth below, the answer to both questions is yes. Therefore, the Court grants Defendants' motion to dismiss the federal constitutional claims that arise from the consent judgment, including claims related to Defendants' decision not to grant Plaintiff's rezoning application and request for a variance. (ECF No. 7).

Lunsford also asserts separate § 1983 procedural due process claims based on (1) the City's decision to withhold occupancy and completion certificates for a storage building that he constructed pursuant to a separate zoning approval that has not been invalidated and (2) the City's refusal to construct agreed-upon gas mains on Lunsford's property. Defendants did not explicitly move to dismiss the claims based on that conduct. Accordingly,

those claims remain pending, along with Lunsford's state law
claims.   The Court notes that the complaint does not set out
separate counts based on the City's conduct regarding the
certificates and gas mains.   Count I, Lunsford's procedural due
process count, briefly mentions the conduct, though Count I focuses
predominately on the poultry house zoning issue.   If Defendants
contend that the complaint fails to state a claim on these
additional procedural due process claims, Defendants may file a
second motion to dismiss within twenty-one days of the date of
this order.

MOTION TO DISMISS STANDARD

"To survive a motion to dismiss" under Federal Rule of Civil
Procedure 12(b)(6), "a complaint must contain sufficient factual
matter, accepted as true, to 'state a claim to relief that is
plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678
(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570
(2007)).   The complaint must include sufficient factual
allegations "to raise a right to relief above the speculative
level." *Twombly*, 550 U.S. at 555.   In other words, the factual
allegations must "raise a reasonable expectation that discovery
will reveal evidence of" the plaintiff's claims. *Id.* at 556.   But
"Rule 12(b)(6) does not permit dismissal of a well-pleaded
complaint simply because 'it strikes a savvy judge that actual
proof of those facts is improbable.'" *Watts v. Fla. Int'l Univ.*,

495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

FACTUAL ALLEGATIONS

## I.    The Zoning Ordinance

The City of Bowman is a municipal corporation located in Elbert County, Georgia.  Under the City's charter, the City has the power to "regulate and license or to prohibit the keeping or running at large of animals and fowl" within the City limits Compl. Ex. N, Bowman Charter § 1.12(b)(2), ECF No. 1-14.  The City also has the power of planning and zoning, including the power to provide regulations "to insure a safe, healthy, and aesthetically pleasing community."  *Id.* § 1.12(b)(23).

The City adopted a zoning ordinance in 2018, and it applies to all land within the City limits.  Compl. Ex. B, Bowman Zoning Ordinance § 1.4, ECF No. 1-2; *see also* Bowman Charter § 1.11 (stating that the City's boundaries are shown on an official map that is retained in City Hall).  The zoning ordinance established five zoning districts, including an agriculture district.  Zoning Ordinance § 4.1.  The agriculture district's regulations "are designed to provide the landowner an opportunity to engage in limited hobby type agricultural activities for personal use," except that "fresh fruits, flowers or vegetables" may be "raised on the property" and "sold to the public."  *Id.* § 7.1.  An agricultural parcel is one "used primarily for soil-dependent

4

cultivation of agricultural small scale crop production, growth of a field, or forestry, *excluding the raising of livestock, poultry and other Confined Animal Feeding Operations.*"  *Id.* § 3.1, p. 3 (emphasis added).  "Agricultural uses" are expressly permitted within the agriculture district, "including small scale crop farming, truck gardening, forestry, *but excluding livestock, poultry houses and feedlots.  Id.* § 7.1.1.6 (emphasis added).

If a property use is not specifically authorized in a zoning district, the property owner may apply for a conditional use permit.  *Id.* § 11.1; *accord id.* § 5.1 (stating that land shall not be used "except in conformity with" the zoning ordinances for its district).  The zoning ordinance lists conditional uses that may be allowed if the property owner obtains a conditional use permit approved by the mayor and City Council.  *Id.* § 7.1.2 (listing conditional uses for the agriculture district); *accord id.* § 3.1, pp. 5 (defining "Conditional Use").  For the agriculture district, several conditional uses "may be permitted," but poultry houses are not on the list.  *See id.* § 7.1.2 (listing bed and breakfasts, cemeteries, community centers, plant nurseries, and farm stands as conditional uses for the agriculture district).

The zoning ordinance also permits a variance, which is a "minimal relaxation or modification of the strict terms of the height, area, placement, setback, yard, buffer, landscape strip, parking and loading ordinances as applied to specific property"

that may be granted "when, because of particular physical surroundings, shape, or topographical condition of the property, not due to the fault of the owner of said property, compliance would result in a particular hardship upon the owner." *Id.* § 3.1, p. 14. The zoning ordinance has specific procedures for consideration of variances and conditional uses. *See generally id.* Article XI. The zoning ordinance also has specific procedures for an application to rezone property from one type to another. *See generally id.* Article XIII.

Once the mayor and City Council make a zoning decision, any party aggrieved by that decision has the right to appeal to the Elbert County Superior Court within thirty days. *Id.* § 15.7.2. An appeal "stays all proceedings in[ ]furtherance of the action appealed from" unless the building inspector certifies that the stay would "cause imminent peril to life and property." *Id.* § 15.7.3.

## II. The Zoning Decisions

Aubery Lunsford does not live in the City or in Elbert County, but he owns real property in the City "at 199 and 339 West Railroad Street, Bowman, Elbert County, Georgia." Compl. ¶¶ 27, 42, ECF No. 1. He purchased the property in 2021, intending to develop twelve commercial poultry houses, a residential subdivision, and a storage building to support construction of the poultry houses and subdivision. *Id.* ¶ 44. At the time, the property was zoned

Agricultural, and Lunsford did not have permission for any of these projects. *Id.* ¶ 2 ("Beginning in 2022, the City and Mr. Lunsford agreed on a plan to develop certain areas of the City."). There is no allegation that Lunsford sought to continue any prior nonconforming uses of the property that were grandfathered in under Article VI of the City's zoning ordinance.

In 2022, Lunsford filed an application asking the City to rezone some of his property from Agricultural to R-2 (medium density residential) so he could build the subdivision, and to rezone some of his property to R-3 (high density residential) so he could build apartments. *Id.* ¶ 45; Compl. Ex. A, H'rg Notice, ECF No. 1-1. He also applied for a conditional use permit so he could construct the storage building. Compl. ¶ 46. The City Council approved the rezoning to R-2 for the subdivision, as well as the conditional use permit for the storage building; it did not approve the rezoning to R-3 for the apartments. Compl. Ex. C, Council Minutes 2-3 (Aug. 22, 2022), ECF No. 1-3. Lunsford agreed with the City Council members that the subdivision would be constructed to use City-supplied water and gas utilities. Compl. ¶ 50.

The next year, in 2023, Lunsford applied to rezone seventy-five acres from Residential to Agricultural and for a variance to build twelve commercial poultry houses. Compl. ¶ 52. He included with his application a "constitutional objection" statement

opining that any application of the City's zoning rules to restrict his use of the property would be unconstitutional and that the City would violate his constitutional rights if it denied his application.  Compl. Ex. E, Constitutional Objections Exhibit to Zoning Application, ECF No. 1-5 at 3.  An adjoining property owner, Scott Harpold, appeared at one of the public comment hearings and objected to Lunsford's application.  Unpersuaded by Harpold, the council voted 3-2 on July 24, 2023 "to allow" Lunsford "to move forward with building the 12 chicken houses."  Compl. Ex. H, Council Minutes 2 (July 24, 2023), ECF No. 1-8.  The City issued a building permit to Lunsford for the poultry houses on July 24, 2023.  Lunsford filed a notice of intent with the Georgia Environmental Protection Division to obtain coverage under a construction stormwater general permit.  Compl. Ex. I, Notice of Intent 1 (July 27, 2023), ECF No. 1-10.  He also entered a contract with the City under which the City agreed to install gas mains on the parcel where he intended to build the poultry houses.  In late July or early August 2023, Lunsford began the initial clearing and grading of the land for the poultry houses.  Compl. ¶ 65.  Around the same time, he also began clearing and grading for the storage building.

Within thirty days of the City's July 24, 2023 zoning decision, Bowman residents Jennifer and Arthur Lane filed a petition under the Georgia Zoning Procedures Law for review by the

Elbert County Superior Court. Defs.' Mot. to Dismiss Ex. C, Petition for Review (Aug. 18, 2023), ECF No. 7-3; *accord* Petition, Docket # 3 in SUEV2023000309 (Super. Ct. Elbert Cnty., Aug. 18, 2023); Compl. ¶ 135.[1] The law permits members of the public to petition the Superior Court for review of a local government's exercise of zoning powers. O.C.G.A. § 36-66-5.1(a). In their petition, the Lanes asserted that the City's decision was not authorized under the City's zoning ordinance, that the City did not meet procedural requirements before the vote, and that Lunsford's requested variance was not supported by the law. Under Georgia's Zoning Procedures Law, the Lanes' challenge to the zoning decision stayed "all legal proceedings in furtherance of the" challenged action. *Id.* § 36-66-5.1(d); *accord* Bowman Zoning Ordinance § 15.7.3. There is no allegation that Lunsford obtained relief from the stay.

Lunsford was a necessary party named as a defendant in the Superior Court zoning challenge. He acknowledges that he was served with the petition and that he did not respond. Defs.' Mot. to Dismiss Ex. E, Lunsford's Mot. to Set Aside ¶ 3 (Jan. 11, 2024),

---

[1] The Superior Court action is referenced in Lunsford's complaint, and several of the filings are attached as exhibits to the complaint or to Defendants' motion to dismiss. Lunsford does not dispute that the Court may also take judicial notice of the state court litigation history, including the pleadings, filings, and judgment on the Superior Court's docket. *See, e.g., Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 651 (11th Cir. 2020) (noting that the courts may take judicial notice of state court dockets and filings).

ECF No. 7-5; *accord* Lunsford's Mot. to Set Aside, Docket # 20 in SUEV2023000309 (Super. Ct. Elbert Cnty., Jan. 11, 2024).  The City did respond, and it initially denied any wrongdoing.

In the meantime, Harpold decided to run for mayor of the City. His campaign slogan was "Go Home, Motherclucker," and he promised to prevent Lunsford from building or operating poultry houses in the City.  Harpold won the election, and he took office on November 6, 2023.  Compl. ¶ 126.  At the November 27, 2023 City Council meeting, the Bowman city attorney reported that he had discussed a possible settlement with counsel for the Lanes; the Lanes offered to settle their Superior Court action if the City agreed to invalidate the approval for the poultry houses.  *Id.* ¶ 139; *accord* Compl. Ex. T, Council Minutes 5 (Nov. 27, 2023), ECF No. 1-20. Harpold asked for a motion to accept the proposed settlement, and the motion passed with three City Council members voting in favor of the settlement and two abstaining.  According to Lunsford, one basis for the decision was that the City's zoning ordinance excludes poultry houses from allowed agricultural uses.  Compl. ¶ 140.  On December 12, 2023, the Superior Court entered a consent judgment, which stated:

> By consent of the Petitioners and the City, Court finds that the City's decisions on July 24, 2023, approving Aubery Lunsford's application to rezone 75 acres of Tax Map Parcel 005-0041 and Aubery Lunsford's application for a variance to build poultry/chicken houses within the City of Bowman ("the Zoning Decisions") were not sustained by sufficient evidence and contained legal error.  Therefore, the Court hereby finds the Zoning

Decisions to be invalid and the Court hereby reverses
and vacates said Zoning Decisions.

Compl. Ex. U, Consent J. 1 (Dec. 12, 2023), ECF No. 1-21; *accord*
Consent J., Docket # 17 in SUEV2023000309 (Super. Ct. Elbert Cnty.,
Dec. 12, 2023).

Lunsford did not file a direct appeal of the consent judgment,
and he did not seek an extension of time to file a direct appeal.
Instead, he filed a motion to set aside the consent judgment,
arguing that the consent judgment was improper because he did not
agree to it.  The Elbert County Superior Court denied the motion,
finding that Lunsford was in default and that his consent was not
required for the consent judgment.  Compl. Ex. V, Order 8 (July
17, 2024), ECF No. 1-22; *accord* Consent J., Docket # 34 in
SUEV2023000309 (Super. Ct. Elbert Cnty., July 17, 2024).  Lunsford
sought a petition for certificate of immediate review of the order
denying his motion to set aside, which the Superior Court summarily
granted.  Petition, Docket # 35 in SUEV2023000309 (Super. Ct.
Elbert Cnty., July 19, 2024); Certificate, ECF No. 36 in
SUEV2023000309 (Super. Ct. Elbert Cnty., July 22, 2024).  The
Georgia Court of Appeals denied Lunsford's application for review.
Lunsford maintains that the Lanes' petition for review is still
pending in the Elbert County Superior Court despite the consent
judgment because the Lanes sought attorney's fees against the City
under O.C.G.A. § 13-6-11, which was not expressly addressed in the
consent judgment.

At the request of Lunsford's counsel, the Superior Court held a hearing on the issue, where counsel for the Lanes and counsel for the City asserted that the attorney's fees issue was moot but opposed Lunsford's request for the Superior Court to enter an order explicitly stating that the issue was moot. *See generally* Hr'g Tr. (Sept. 13, 2024), Docket # 43 in SUEV2023000309 (Super. Ct. Elbert Cnty., filed Apr. 25, 2025). The Superior Court took the issue under advisement but has not yet issued a ruling.

At present, Lunsford cannot complete construction of the poultry houses because the consent judgment invalidated the City's approval for the poultry houses. Lunsford further asserts that the City has not constructed the gas mains to supply natural gas utilities for his property despite its agreement to do so. Lunsford also claims that the City, at Harpold's insistence, refuses to issue certificates of completion or occupancy for the storage building. There is a pending nuisance and trespass action between Harpold and Lunsford; Harpold brought the action against Lunsford in December 2024 based on the storage building's lights and security cameras, as well as the dust and smoke generated during construction of the building. Compl. ¶¶ 102-06; *see generally* Petition (Dec. 16, 2024), Docket # 1 in 24CV1160 (Superior Ct. Jackson Cnty.). According to Lunsford, the City has no legitimate basis for refusing to issue the certificates, and

the real reason for the City's refusal is Harpold's personal opposition to the storage building.

Lunsford asserts several claims against the City under 42 U.S.C. § 1983 based on alleged violations of the U.S. Constitution. He makes procedural due process and substantive due process claims based on the City's decision to enter the consent judgment that revoked his authorization to build the poultry houses. He also asserts a procedural due process claim based on the City's refusal to issue certificates of occupancy and completion for the storage building. He further contends that the City's zoning ordinance is void for vagueness because the City's boundaries are not adequately defined. Lunsford also argues that he had a vested right to use his land to build the poultry houses and that the City's revocation of its approval constituted an impermissible retroactive law that injured his vested rights. Lunsford seeks declaratory and injunctive relief in connection with these § 1983 claims: he asks the Court to declare that the City's decision to enter the consent judgment was unlawful, to order that he may construct and operate the poultry houses, and to enjoin the City from taking further action to prevent him from constructing the poultry houses. In addition to his federal constitutional claims, Lunsford asserts several state law claims.

DISCUSSION

The City moved to dismiss all of Lunsford's § 1983 claims as barred by the *Rooker-Feldman* doctrine.  "The *Rooker-Feldman* doctrine 'is a jurisdictional rule that precludes the lower federal courts from reviewing state court judgments.'" *Efron v. Candelario*, 110 F.4th 1229, 1235 (11th Cir. 2024) (quoting *Alvarez v. Att'y Gen. of Fla.*, 679 F.3d 1257, 1262 (11th Cir. 2012)). "Under *Rooker-Feldman*, 'a party losing in state court is barred from seeking what in substance would be appellate review of the state court judgment in a United States District Court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.'" *Id.* (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005-06(1994)); *accord Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (stating that *Rooker-Feldman* applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments").  The rationale for the doctrine is that federal law "limits federal review of state court proceedings to the United States Supreme Court," and "federal district courts are courts of original jurisdiction"—not appellate courts.  *Powell v. Powell*, 80 F.3d 464, 466 (11th Cir. 1996).

The *Rooker-Feldman* doctrine only bars federal district courts from reviewing *final* state court judgments.  *David Vincent, Inc. v. Broward Cnty.*, 200 F.3d 1325, 1332 (11th Cir. 2000) (finding that the state court's denial of a temporary injunction in a First Amendment case was not a "final or conclusive judgment" that barred a federal district court from considering the First Amendment claim under *Rooker-Feldman*).  Lunsford argues that the consent judgment at issue here is not a "final judgment" that would bar the present action under *Rooker-Feldman* because it did not explicitly address the Lanes' request for attorney's fees under O.C.G.A. § 13-6-11. Lunsford maintains that the "claim" for attorney's fees remains pending, despite the consent judgment and the Superior Court clerk's civil disposition closing the case.

O.C.G.A. § 13-6-11 allows a jury to award attorney fees *as part of the damages* if "the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense."  But O.C.G.A. § 13-6-11 "does not create an independent cause of action"—it simply allows the jury to award "an additional element" of compensatory damages "as part of a substantive claim for relief."  *Premier Residential SE, LLC v. Silverstone Residential, LLC*, 889 S.E.2d 325, 334 (Ga. Ct. App. 2023) (quoting *Ga. Dep't of Corr. v. Couch*, 759 S.E.2d 804, 810 (Ga. 2014)).  Here, the only substantive cause of action in the Lanes' Superior Court petition was their claim under O.C.G.A. § 36-

66-5.1 that the City's July 24, 2023 zoning decision was invalid. The consent judgment expressly disposed of that claim and did not reserve any other matters for later adjudication. Accordingly, the consent judgment was a final adjudication of the Lanes' Superior Court zoning challenge and was therefore a "final judgment," which was entered more than a year before Lunsford filed this action.[2]

Having concluded that the Superior Court consent judgment was a final judgment, the Court must determine whether Lunsford's present action is one of the narrow situations to which *Rooker-Feldman* applies. *Rooker-Feldman* only bars "those claims asserted by parties who have lost in state court and then ask the district court, ultimately, to review and reject a state court's judgments." *Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1285–86 (11th Cir. 2018). If the claim before the district court was "actually adjudicated by a state court" or is "'inextricably intertwined' with a state court judgment," then it is barred. *Id.* at 1286 (quoting *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009) (per curiam)). A claim is "inextricably intertwined" with

---

[2] The Court recognizes that Lunsford's counsel convinced the Superior Court to issue a certificate of immediate review of the order denying his motion to set aside the consent judgment. The Court is not persuaded that this decision establishes that there was no final judgment or decision that would have been subject to direct appeal. Evidently, the Superior Court judge was also not convinced because he took the matter under advisement. *See generally* Hr'g Tr. (Sept. 13, 2024), Docket # 43 in SUEV2023000309 (Super. Ct. Elbert Cnty., filed Apr. 25, 2025).

a state court judgment "if it asks to 'effectively nullify the state court judgment, or it succeeds only to the extent that the state court wrongly decided the issues.'" *Id.* (quoting *Casale*, 558 F.3d at 1260). So, a "claim that at its heart challenges the state court decision itself—and not the statute or law which underlies that decision—falls within the doctrine because it 'complain[s] of injuries caused by state-court judgments' and 'invite[s] . . . review and rejection of those judgments.'" *May v. Morgan Cnty.*, 878 F.3d 1001, 1005 (11th Cir. 2017) (per curiam) (alterations in original) (quoting *Exxon Mobil*, 544 U.S. at 284).

In *May*, for example, a property owner brought a § 1983 action in state court against the county where her property was located, arguing that the county could not apply its zoning regulation that prohibited short term rentals to her property because she had a grandfathered right to offer short term rentals. She lost the state court action because she failed to exhaust her administrative remedies before filing suit and failed to challenge the relevant zoning ordinance within 30 days of its passage. *May*, 878 F.3d at 1003. The property owner then filed a new § 1983 action in federal court, asserting that continued application of the zoning regulation to her property violated her "grandfathered constitutional rights." *Id.* at 1004. She contended that the second action was not an as-applied challenge to the zoning regulation like the first one was, but the district court rejected

17

that argument and found that the second action was barred under *Rooker-Feldman*. The Eleventh Circuit affirmed because the property owner could only succeed in the federal court action if the federal court concluded that the state court wrongly found that the property owner's state court constitutional challenge to the regulation was barred as untimely. *Id.* at 1005-06. Such "review and rejection" of a state court judgment is not allowed under *Rooker-Feldman*. *Id.* at 1006 (quoting *Exxon Mobil*, 544 U.S. at 284).

Here, Lunsford clearly seeks to vacate and nullify the Superior Court consent judgment: his § 1983 claims are based on his assertion that he has a constitutional right to build poultry houses on the property, he wants the Court to declare that he may construct and operate the poultry houses, and he seeks an injunction prohibiting the City from taking further action to prevent him from constructing the poultry houses. Lunsford nonetheless contends that *Rooker-Feldman* does not bar his present claims because he did not have a reasonable opportunity to raise his constitutional challenges in the Superior Court zoning action. Lunsford is correct that a federal claim is only "inextricably intertwined" with a state court judgment if there was a reasonable opportunity to raise the claim during the state court proceeding. *Target Media Partners*, 881 F.3d at 1286. Therefore, if the federal claim does not raise "a question that was or should have been

properly before the state court," it is not inextricably intertwined. *Id.* at 1286-87 (finding that *Rooker-Feldman* did not bar a magazine distributor from bringing a defamation action against a magazine publisher that prevailed against it in a prior state court fraud action because the allegedly defamatory publication did not occur until "long after the state court rendered its judgment" so "there was no opportunity to complain about the allegedly injurious act in the state court proceeding").

Here, Lunsford contends that he did not have a reasonable opportunity to raise his present constitutional challenges in the state court proceeding because the City Council's vote to enter the consent judgment was taken without his knowledge. But the questions raised by the present action—including scope of the City's authority to decide whether Lunsford could build poultry houses on his property—were necessarily at issue in the state court action which challenged that authority. The whole point of the Superior Court proceeding was to determine whether the City validly approved the poultry houses. Lunsford was a party to that action, so he had a reasonable opportunity to argue that the Lanes' zoning challenge must fail due to his constitutional right to build the poultry houses. And, had he chosen to participate in the Superior Court action, Lunsford would have had a reasonable opportunity to object to any proposed consent judgment between the City and the Lanes. When Lunsford defaulted in the Superior Court action, he

19

waived his right to participate in the litigation and any resulting settlement agreement by the remaining parties. Under these circumstances, the Court is not persuaded that Lunsford lacked a reasonable opportunity to raise his present constitutional challenges in the state court proceeding.

Lunsford also argues that *Rooker-Feldman* does not apply because he does not challenge the consent judgment itself. Rather, Lunsford contends that he only challenges the City's conduct in deciding to enter the consent judgment, apparently because he believes that the City was required to give him notice and an opportunity to be heard before voting to enter the consent judgment. Again, Lunsford had an opportunity to participate in the litigation that resulted in the consent judgment. If he had done so instead of defaulting, he could have been heard on his constitutional arguments regarding the City's authority (or lack of authority) to restrict his property use, and he could have objected to any proposed consent judgment. Moreover, Lunsford does not dispute that in Georgia, a consent judgment is enforceable as a final judgment that "can be accorded preclusive effect" and be considered an "adjudication of the merits," even though it "is brought about by agreement of the parties." *Brown & Williamson Tobacco Corp. v. Gault*, 627 S.E.2d 549, 553 (Ga. 2006). He also does not dispute that a state court judgment entered against a defaulting party can still bar a later action by that party under

20

*Rooker-Feldman.  See Figueroa v. MERSCORP, Inc.*, 477 F. App'x 558, 561 (11th Cir. 2012) (per curiam) (noting that although the federal court plaintiff "failed to litigate" his federal claims in a prior state court action because he defaulted, "he had a reasonable opportunity to do so").

In summary, Lunsford was a state-court loser in the Superior Court zoning action.  The Superior Court judgment formed the basis of or was intertwined with the injury Lunsford now complains of: that the City placed allegedly unconstitutional restrictions on the use of his property.  Lunsford had a reasonable opportunity to raise his present constitutional challenges in the Superior Court zoning action.  And the Superior Court zoning action concluded with a final judgment before Lunsford filed this action asking this Court to review and reject the Superior Court judgment.  For these reasons, the Court finds that Lunsford's present § 1983 claims arising out of the poultry house zoning decision are barred by *Rooker-Feldman*.  Accordingly, the Court lacks subject matter jurisdiction over those claims, and they are dismissed.

In addition to his § 1983 claims based on the invalidation of the poultry house approvals, Lunsford asserts procedural due process claims based on (1) the City's refusal to issue certificates of occupancy and completion for his storage building, which he cannot lawfully use until those certificates are issued, and (2) the City's refusal to construct the agreed-upon gas mains

on his property.   Defendants did not clearly move to dismiss the procedural due process claims based on this conduct.   Accordingly, they remain pending.   However, if Defendants contend that the complaint fails to state a procedural due process claim based on this conduct, Defendants may file a second motion to dismiss within twenty-one days of the date of this order.   Defendants also did not make any substantive arguments for dismissal of Lunsford's state law claims; they simply argued that the Court should decline to exercise supplemental jurisdiction over those claims if the Court dismissed all of Lunsford's federal claims.   Since some of Lunsford's federal claims remain pending, the Court may retain supplemental jurisdiction over the state law claims, so they remain pending.

CONCLUSION

For the reasons set forth above, the Court grants Defendants' motion to dismiss (ECF No. 7) to the extent that Lunsford's § 1983 claims based on invalidation of the City's approval to build the poultry houses are dismissed as barred by the *Rooker-Feldman* doctrine.   Lunsford's § 1983 procedural due process claims related to the storage building certificates and the gas main installation remain pending, as do his state law claims.

IT IS SO ORDERED, this 18th day of August, 2025.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA